IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| APOLLO GALILEO USA PARTNERSHIP, a Delaware Partnership, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| AMERICAN LEISURE HOLDINGS, INC., a Nevada corporation, AMERICAN LEISURE EQUITIES CORPORATION, a Florida corporation and AROUND THE WORLD TRAVEL, INC., a Florida corporation, | ) ) ) ) ) ) |
| Defendants. | ) ) |

07 C 4403

Judge Ronald A. Guzmán

## MEMORANDUM OPINION AND ORDER

In this diversity action, Apollo Galileo USA Partnership ("Apollo") has sued American Leisure Holdings, Inc. ("ALH"), a Nevada corporation; American Leisure Equities Corp. ("ALEC"), a Florida corporation; and Around the World Travel, Inc. ("AWT"), a Florida corporation, for breach of contract. Before the Court is ALH and ALEC's motion to dismiss the complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) ("Rule 12(b)(2)"). For the reasons set forth below, the Court grants the motion.

## Facts

ALH is a real estate development, travel, and communications services distribution company. (Compl. ¶ 2.) ALEC is one of ALH's wholly-owned subsidiaries engaged in the travel aspect of ALH's business. (*Id.*; Pl.'s Resp. Mot. Dismiss, Ex. A, Jimenez Dep. ("Jimenez Dep.") 12:3-4.) Prior to 2004, AWT owned TraveLeaders, a large travel services distribution business. (Compl. ¶ 4.) Apollo is a provider of travel information and travel-related

transaction processing.  (*Id.* ¶ 1.)

On October 30, 2002, AWT d/b/a TraveLeaders and Apollo entered into a Subscriber Services Agreement ("Agreement").  (*Id.* ¶ 9.)  Under the terms of the Agreement, Apollo was to provide certain hardware and licenses to AWT that would permit AWT to use, among other things, Apollo's reservation services.  (*Id*. ¶¶ 9-10.)  The Agreement set forth annual reservation targets that AWT was required to meet and outlined the shortfall fees that AWT would have to pay if AWT failed to meet such targets.  (*Id*. ¶¶ 12-13.)  The Agreement provided that "disputes arising under or in connection with this Agreement shall be governed by the internal laws of the State of Illinois . . . [and] shall be brought and tried in federal or state courts located within the County of Cook, State of Illinois, and the parties hereby consent to submit to the personal jurisdiction of such courts . . . ."  (Defs.' Mot. Dismiss, Ex. A, Subscriber Service Agreement ¶ 17.)  The term of the Agreement was from November 1, 2002 to October 31, 2007.  (Compl. ¶ 8.)

In 2004, ALEC purchased certain assets of AWT and acquired no obligations.  (*See* Defs.' Mot. Dismiss, Ex., Jimenez Aff. ("Jimenez Aff.") ¶ 11; Jimenez Dep. at 61:2-62:7.)  Apollo, without any citation to evidentiary support, alleges that:  ALH, either individually or through ALEC, acquired AWT's assets and obligations, including the Agreement between AWT d/b/a TraveLeaders and Apollo and ALH d/b/a TraveLeaders continued to receive and use services under the Agreement.  (Compl. ¶ 19; Pl.'s Resp. Mot. Dismiss 14-15.)  Thus, according to Apollo, ALH and AWT failed to pay the shortfall fees associated with TraveLeaders' failure to meet the 2007 annual target in accordance with the Agreement.  (Compl. ¶¶ 22-23, 29-30.)

On September 13, 2007, this Court granted Apollo's motion to stay the briefing schedule on the motion to dismiss and allowed discovery as to personal jurisdiction.  Discovery has

concluded and the motion is now fully briefed.

Defendants ALEC and ALH move to dismiss this action for lack of personal jurisdiction, and argue that Apollo failed to establish that ALEC and ALH have sufficient contacts with Illinois. Specifically, ALEC and ALH argue that this Court lacks general jurisdiction as well as specific jurisdiction over them.

## **Discussion**

When deciding a Rule 12(b)(2) motion to dismiss, "all well-pleaded jurisdictional allegations in the complaint are accepted as true unless controverted by affidavit." *Travelers Cas. & Sur. Co. v. Interclaim (Bermuda) Ltd.*, 304 F. Supp. 2d 1018, 1021 (N.D. Ill. 2004). "Any conflicts in the pleadings and affidavits are to be resolved in the plaintiffs' favor, but the court accepts as true any facts contained in the defendants' affidavits that remain unrefuted by the plaintiffs." *Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines, Inc.*, 262 F. Supp. 2d 898, 905 (N.D. Ill. 2003); *see RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997). "[T]he plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

The plaintiff must establish personal jurisdiction by a preponderance of the evidence. *RAR, Inc.*, 107 F.3d at 1276. In a diversity suit, personal jurisdiction exists only if an Illinois court would have jurisdiction. *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 945 (7th Cir. 1992). To determine whether an Illinois court has personal jurisdiction over a non-resident defendant, a Court must determine: (1) whether Illinois' long-arm statute permits *in personam* jurisdiction and (2) whether the assertion of jurisdiction under the long-arm statute would be inconsistent with due process. *Daniel J. Hartwig Assocs., Inc. v. Kanner*, 913 F.2d 1213, 1216 (7th Cir.

1990). Under Illinois' long-arm statute, Illinois courts may exercise jurisdiction on "any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 Ill. Comp. Stat. 5/2-209(c). Accordingly, "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." *Hyatt Int'l v. Coco,* 302 F.3d 707, 715 (7th Cir. 2002).

The Supreme Court has recognized two types of personal jurisdiction: general and specific. *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 414-15 nn.8-9 (1984). Ultimately, a court may only exercise personal jurisdiction over a non-resident defendant if it has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quotation omitted).

In the Complaint, Apollo alleges that this Court has personal jurisdiction over ALH and ALEC because they "do business within this District, were involved in the making and performance of a contract that has a substantial connection to this District, and expressly consented to the jurisdiction of this court in the . . . Agreement." (Compl. ¶ 6.) In its motion to dismiss, ALEC and ALH assert that this Court lacks general jurisdiction over ALH *and* ALEC because neither have had sufficient contacts with Illinois. With respect to specific jurisdiction, ALEC and ALH concede that ALEC was the entity that purchased certain assets from AWT – not ALH. (Defs.' Mot. Dismiss 8.)

In its response to the motion to dismiss, Apollo presumes that ALEC and ALH are one entity for jurisdictional purposes. Accordingly, the Court will first address whether it may exercise general or specific jurisdiction over ALEC and then address whether ALEC's contacts

should be imputed to ALH based on their relationship.[1]

## **General Jurisdiction as to ALEC**

"[G]eneral jurisdiction allows a defendant to be sued in the forum regardless of the subject matter of the litigation." *Purdue Research*, 338 F.3d at 787. "General jurisdiction is permitted only where the defendant has continuous and systematic general business contacts with the forum." *Id.* (quotation omitted). "Those contacts must be so extensive as to make it 'fundamentally fair to require [defendants] to answer in any [Illinois] court in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world.'" *Travelers Cas.*, 304 F. Supp. 2d at 1025 (quoting *Purdue Research*, 338 F.3d at 787) (emphasis in original).

Apollo has not alleged that ALH and ALEC have continuous and systematic general business contacts with Illinois. (*See* Compl. ¶ 6.) Accordingly, the issue is deemed waived. *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272 (7th Cir.1997) (finding that plaintiff's failure to allege that defendant had systematic contacts with Illinois constituted a waiver of any general jurisdiction argument). As discussed below, however, even if the issue were not waived, the Court would still find that there is no general jurisdiction over ALEC and ALH.

---

[1] Apollo also briefly contends, without citation to case law or evidence in the record, that because one of ALH's directors is a permanent resident of Illinois, personal jurisdiction as to ALH is proper. (*See* Pl.'s Resp. Mot. Dismiss 14.) Even if Apollo had properly raised this argument, which it did not, it lacks merit. The Supreme Court has held that the fact that an officer of a corporation permanently resides in the forum state is irrelevant for personal jurisdiction purposes if he is not "vest[ed] with the authority to transact business in such State" as it violates the Fourteenth Amendment. *Riverside & Dan River Cotton Mills v. Menefee,* 237 U.S. 189, 195 (1915). Although Apollo was given leave to take discovery as to personal jurisdiction, it does not offer any evidence that the director who resides in Illinois is vested with the authority to transact business in Illinois.

### 1. Thousands of Travel Transactions

Apollo argues that ALEC entered into thousands of travel-related business transactions with Illinois residents between January 1, 2005 and Fall 2007.  (Pl.'s Sur-Reply Opp'n Mot. Dismiss 4-5.)  In support, Apollo offers an ALEC-generated report of transaction activity as well as portions of ALEC's Chief Financial Officer Omar Jimenez's deposition testimony describing the report.  (Pl.'s Resp. Mot. Dismiss 5; Jimenez Dep. at 64:4-66:5; Pl.'s Ex. 27, Transaction Report.)  Within that report, Apollo lists at least 1,347 individuals who are Illinois residents. (*Id.*)  Apollo asserts that ALH and ALEC made a profit from these transactions with Illinois residents.  (Pl.'s Resp. Mot. Dismiss 5; Jimenez Dep. at 66:22-67:6.)  The transactions were entered into either by way of a travel agent who spoke directly with the individual client or through one of ALEC's websites.  (Pl.'s Resp. Mot. Dismiss 5; Jimenez Dep. at 70:3-73:16.) The Court will address the issues of the websites and the travel agents separately below.

In response, ALEC argues that only one percent of its business is attributed to individuals who entered an Illinois address into the database.  (Defs.' Reply Further Supp. Mot. Dismiss 1; Jimenez Aff. ¶¶ 9-10.)  Standing alone, the fact that ALEC generates a small percentage of its business from Illinois residents is insufficient to confer general jurisdiction over it.  *See Berndorf Belt Sys., Inc. v. Harwood Rubber Prods., Inc.*, No. 01 C 2202, 2001 WL 800090, at *2 (N.D. Ill. Mar. 28, 2001); *Kavo Am. Corp. v. J.F. Jelenko & Co.*, No. 00 C 1355, 2000 WL 715602, at *4 (N.D. Ill. June 2, 2000); *Deere & Co. v. Howard Price Turf Equip., Inc.*, No. 99 C 4169, 1999 WL 1101215, at *3-4 (N.D. Ill. Dec. 1, 1999).

## 2. Websites

A review of the vast majority of both state and federal decisions analyzing whether Internet websites may subject an out-of-state resident to personal jurisdiction confirm that "the type of Internet activity that is necessary to establish minimum contacts is an emerging area of jurisprudence." *Linehan v. Golden Nugget*, No. 05 C 7030, 2008 WL 4181743, at *5 (N.D. Ill. Sept. 5, 2008); *see Bombliss v. Cornelsen*, 824 N.E.2d 1175 (Ill. App. Ct. 2005). Most courts focus on the extent to which the website in question is "'passive' (*i.e.,* the website merely makes available information about the company and its products) or 'interactive' (*i.e.,* the website permits customers to order goods and services)." *Linehan,* No. 05 C 7030, 2008 WL 4181743, at *8. Some courts have adopted a sliding scale approach, which provides that passive websites are not sufficient to subject a company to personal jurisdiction while interactive websites generally are. *See Elayyan v. Sol Melia SA,* 571 F. Supp. 2d 886, 900 (N.D. Ind. 2008); *U.S. Sch. of Golf, Inc. v. Biltmore Golf, Inc.,* No. 1:05 CV 0313 DFH TAB, 2005 WL 3022005, at *6 (S.D. Ind. Nov. 10, 2005). However, "regardless how interactive a website is, it cannot form the basis for personal jurisdiction . . . unless the contacts through the website are so substantial that they may be considered 'systematic and continuous' for the purpose of general jurisdiction." *Richter v. INSTAR Enters. Int'l, Inc.*, __ F. Supp. 2d ____, No. 08 C 50026, 2009 WL 174981, at *5 (N.D. Ill. Jan. 23, 2009) (quotation omitted).

Moreover, courts have consistently refused to exercise jurisdiction based solely on the fact that reservations can be placed and purchased through a website. For example, in *Breschia v. Paradise Vacation Club, Inc.*, the defendant, a resort, maintained a website where visitors could make reservations, check rates and availability, and make other arrangements at the resort for their vacation. No. 02 C 3014, 2003 WL 22872128, at *4 (N.D. Ill. Dec. 4, 2003). At the

time reservations were made, the consumer had to provide, among other things, a credit card number and either twenty-five or one-hundred percent of the total price. *Id.* The *Breschia* court held that such a website does not subject the defendant to personal jurisdiction in Illinois because a "website that allows customers to make and pay for reservations over the Internet for lodging in foreign states . . . is not a continuous and systematic contact with Illinois that justifies general jurisdiction." *Id.*; *see Arriaga v. Imperial Palace, Inc.*, 252 F. Supp. 2d 380, 384-87 (S.D. Tex. 2002) (hotel defendant not subject to personal jurisdiction on account of its website even though a fraction of reservations were made by residents of the forum state because the nature of such contacts is not "substantial").

ALEC maintains several websites through which consumers can reserve and pay for flights, hotels and vacation packages. (Pl.'s Resp. Mot. Dismiss 5.) In addition, ALEC operates more than five mass market sites that are accessible by Illinois residents. (*Id.* 6.) As discussed above, Apollo presents evidence that Illinois residents used these websites to book travel arrangements. (*Id.*) However, as in *Breschia*, booking and paying for travel arrangements (*i.e.*, making reservations by way of the Internet) is insufficient to subject an out-of-state resident to personal jurisdiction in Illinois absent evidence that the company specifically or deliberately directs its activities to Illinois residents. Apollo argues that the exercise of jurisdiction is appropriate because the websites allow customers to book travel and lodging in Chicago and elsewhere in Illinois and there is evidence that numerous Internet customers providing Illinois addresses booked travel through the website. In support, Apollo offers the deposition testimony of Omar Jimenez, ALEC's President, which further confirms the nature of the Internet transactions:

    Q. . . . people book through these websites . . . ?
    A. Yes.

> Q. And when I say, bookings is that a term of art . . . ?
> A. It's a term of art.
> Q. . . . a booking is when somebody - - whether it's a reservation . . . for a hotel, a car flight, then you consider that a booking?
> A. A booking is the individual has made an attempt to reserve either air, car, hotel, and they haven't closed the deal. They're just basically making the reservation.

(Jimenez Dep. at 7:21-23, 20:9-24.)

Apollo's assertions and evidence fail to distinguish effectively the internet transactions from reservations, which are insufficient contacts for purposes of general personal jurisdiction. Apollo does not suggest that ALEC's websites were targeted at Illinois customers. To the contrary, Apollo concedes that the websites and advertising (discussed below) do *not* deliberately or specifically target Illinois consumers, admitting that "ALEC does not differentiate between Illinois clients and others." (Pl.'s Resp. Mot. Dismiss 7.) It would be fundamentally unfair to subject a company that does not deliberately or specifically target Illinois customers to general jurisdiction such that it would have to answer in any court in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world.

Although Apollo argues that ALEC derived an economic benefit when consumers purchase flights, hotel rooms, or vacation packages through the websites, it offers no facts as to the extent of that benefit. Apollo does not refute that only one percent of ALEC's business is attributed to individuals entering an Illinois address into the database. Even if the Court were to assume that each transaction with an Illinois resident occurred through one of ALEC's websites, Apollo has not established that ALEC generates sufficient sales from Illinois residents such that ALEC has purposely availed itself of the protection of the laws of Illinois. Thus, the Court would find that Apollo's

evidence regarding ALEC's website is insufficient to establish general jurisdiction over ALEC.

### 3. Advertised to Illinois Residents

Aside from the websites accessible by Illinois residents, ALEC maintains that it does not advertise or solicit business in Illinois. (Defs.' Mot. Dismiss 6; Jimenez Aff. ¶ 9.) Apollo argues that ALEC markets to Illinois residents through its mass marketing efforts which use, in part, its database of customer profiles that include Illinois addresses. (Pl.'s Resp. Mot. Dismiss 7.)

"General jurisdiction cannot be based on nationwide advertising alone." *Elayyan*, 571 F. Supp. 2d at 899; *see InfoSys Inc. v. Billingnetwork.com, Inc.*, No. 03 C 3047, 2003 WL 22012687, at *4 (N.D. Ill. Aug. 27, 2003). "There must be evidence that the defendant intended its advertisements to reach a particular state." *InfoSys Inc.*, 2003 WL 22012687, at *4.

ALEC admits that it has engaged in mass marketing but argues that such national advertisements do not establish general jurisdiction because they are not specifically directed towards Illinois residents. Apollo admits that ALEC's advertising efforts are "mass marketing though mailings" but argues that the mailings reach Illinois residents such that ALEC should be subject to general jurisdiction.
However, Apollo has failed to show that Illinois residents were the specific targets of ALEC's marketing efforts. It is irrelevant that the advertisements eventually reached Illinois residents. Common sense dictates that nationwide advertisements will inevitably reach residents of the many states to which they are sent. Absent a showing that ALEC

specifically targeted Illinois residents, this Court would decline to find general jurisdiction based on nationwide advertisements.

**4. Travel Agents**

Apollo argues that because travel agents in Illinois engage in transactions that benefit ALEC, it is proper to assert general jurisdiction over it. Sales activities in the forum state by independent, non-exclusive agents, who are not subject to the supervision and control of the out-of-state company, do not subject that company to personal jurisdiction. *See Schmidt v. Esquire, Inc.,* 210 F.2d 908, 916 (7th Cir. 1954) (holding that company was not doing business in Indiana based on activities of representatives that were under no supervision, direction, or control of defendant and performed function of soliciting subscriptions on commission basis); *see also Congoleum Corp. v. DLW Aktiengesellschaft,* 729 F.2d 1240, 1242 (9th Cir. 1984). This is so because "independent sales agents maintain their own businesses, are paid according to the results they produce, promote products for various companies, and are not under the control or direction of the companies whose products they are promoting." *Elayyan*, 571 F. Supp. 2d at 902.

The fact that travel agents in Illinois entered into transactions and those transactions benefitted ALEC is irrelevant unless those travel agents were subject to the supervision and control of ALEC. Apollo has failed to allege, or provide any evidence, as to this fact, and therefore the Court would not consider the travel agents' activities a sufficient basis for general jurisdiction.

## 5. Contracts with Illinois-based Companies and Meetings in Illinois Hotels

Apollo argues that general jurisdiction exists with regard to ALEC because over the course of two years, TraveLeaders entered into eight agreements with Illinois-based businesses, the vast majority of which were contracts between TraveLeaders and Chicago hotels, and employees of TraveLeaders attended meetings in Illinois. Each argument is addressed in turn.

First, Apollo has failed to show that ALEC was a party to the agreements. Even it could make such a showing, being a party to a few contracts with Illinois-based companies is insufficient to support general jurisdiction. *See Underwriters Labs., Inc. v. Hydrofilm L.P.,* No. 05 C 5509, 2006 WL 2494748, at *5 (N.D. Ill. Aug. 23, 2006); *Grand Vehicle Works Holdings Corp. v. Frey,* No. 03 C 7948, 2004 WL 742085, at *2 n.3 (N.D. Ill. Apr. 6, 2004). "[A]n out-of-state party's contract with an in-state party is not enough alone to establish the requisite minimum contacts . . . ." *Hyatt Int'l*, 302 F.3d at 713. However, "'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' may indicate the purposeful availment that makes litigating in the forum state foreseeable to the defendant." *Id.* (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 479 (1985)).

In this case, TraveLeaders and United Airlines, an Illinois-based company, entered into a contract with an Illinois choice-of-law provision. However, there is no evidence that ALEC negotiated this contract or choice-of-law provision. In addition, TraveLeaders entered into seven contracts with various hotels in Illinois over the course of two years for the purpose of securing meeting space and hotel accommodations for its clients. However, Apollo has failed to show that any of these contracts involved or

12

contemplated active participation of ALEC or any of its employees in the performance of the agreements in Illinois.

With regard to attendance at meetings in Illinois, ALEC's President Omar Jimenez states that ALEC has not sent any agents into Illinois to conduct business. (*See* Jimenez Aff. ¶ 8.) Plaintiff has failed to refute this evidence. Even if Apollo could establish that employees of ALEC, rather than TraveLeaders, attended meetings in Illinois, attendance at isolated meetings is equally insufficient to confer personal jurisdiction over a non-resident company. *See HW Aviation LLC v. Royal Sons, LLC,* No. 06 C 4445, 2007 WL 2875678, at *4 (N.D. Ill. Sept. 28, 2007).

In sum, there is simply is no evidence that the contracts between TraveLeaders and Illinois-based companies or TraveLeaders' employees' attendance at meetings in Illinois were part of a larger scheme by ALEC to establish continuous and systematic contacts with Illinois. Accordingly, general jurisdiction over ALEC is lacking.

### Specific Jurisdiction over ALEC

Next, the Court must determine whether it has specific jurisdiction over ALEC. "Specific jurisdiction refers to jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *RAR, Inc.,* 107 F.3d at 1277 (quotation omitted). To be subjected to the jurisdiction of a foreign forum, a defendant need only have sufficient "minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316 (quotation omitted). "Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a substantial

13

connection with the forum State." *Burger King*, 471 U.S. at 475 (quotation omitted) (emphasis in original). Courts look to the defendant's "conduct and connection with the forum State" to determine if he should "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).

Although not addressed by the parties, a number of other courts, including the Seventh Circuit, have applied the rationale of successor liability to exercise personal jurisdiction over a nonresident defendant. *Purdue Research,* 338 F.3d at 784; *see Patin v. Thoroughbred Power Boats, Inc.,* 294 F.3d 640, 654 (5th Cir. 2002) ("[A] successor corporation that is deemed to be a 'mere continuation' of its predecessor corporation can be bound by the predecessor corporation's voluntary submission to personal jurisdiction of a court"); *Williams v. Bowman Livestock Equip. Co.,* 927 F.2d 1128, 1131 (10th Cir. 1991) ("A corporation's contacts with a forum may be imputed to its successor if forum law would hold the successor liable for the actions of its predecessor").

"[A] corporation which merges with another corporation takes on the latter corporation's obligations and liabilities while a successor corporation which purchases the business assets of another corporation does not become liable for the debts of the seller in the absence of an express agreement to assume the seller's debts." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1083 (7th Cir. 1997) (quotation omitted). Courts will impose liability:

> (1) where there is an express or implied agreement of assumption;
> (2) where the transaction amounts to a consolidation or merger of the purchaser or seller corporation; (3) where the purchaser is merely a continuation of the seller; or (4) where the transaction is for the fraudulent purpose of escaping liability for the seller's obligations.

*Vernon v. Schuster*, 688 N.E.2d 1172, 1175-76 (Ill. 1997).

Apollo argues in response to the motion to dismiss that this Court has specific jurisdiction over ALEC because it was involved in the making and performance of a contract that has a substantial connection to Illinois, and expressly consented to the jurisdiction of this court in the Agreement. ALEC argues that it could not have consented to the jurisdiction of this Court because it was never a party to the Agreement and further, ALEC did not purchase any of AWT's liabilities, including those related to the Agreement. (Mot. Dismiss 8; Jimenez Aff. ¶¶ 11-12; Jimenez Dep. at 61:2-62:7.) Further, the Agreement proscribes any assignment or transfer by AWT to any other party. (Defs.' Mot. Dismiss 8.)

In response, Apollo does not refute that ALEC solely purchased certain assets of AWT. Instead, Apollo argues that TraveLeaders requested amendments to the services Apollo was providing under the Agreement, and that those amendments were processed in Illinois. (Pl.'s Resp. Mot. Dismiss, Ex. D, Gagliardo Decl. ¶¶ 6-7.) However, Apollo has not cited to any evidence that ALEC requested the amendments.

Apollo further asserts that specific jurisdiction is proper because "it is undisputed that approximately 25-30% of Defendants' Illinois-based transactions utilize services that Plaintiff provides to Defendants under the Subscriber Agreement that is at issue in this case." (Pl.'s Sur-reply Opp'n Mot. Dismiss 7.) It is undisputed, however, that AWT was the party that originally entered into the Agreement and consented to personal jurisdiction in Illinois. Thus, ALEC can be bound by AWT's voluntary submission to personal jurisdiction only if Apollo shows that ALEC is a mere continuation of AWT (*i.e.*, a successor).

In short, the record is devoid of evidence indicating that ALH/ALEC is AWT's successor because Apollo has not established that ALEC was a successor of AWT or otherwise shown that ALEC had sufficient minimum contacts with Illinois such that it would be fair for it to be haled into court here. The Court does not have specific jurisdiction over ALEC.

**Personal Jurisdiction over ALH (Parent/Subsidiary Relationship)**

Apollo argues that personal jurisdiction exists over ALH based on ALEC's contacts with Illinois. Because this Court has found ALEC's contacts to be insufficient to assert personal jurisdiction over it, this argument is moot.

However, even if Apollo's argument were not moot, it would still fail. Generally, a court cannot exercise personal jurisdiction over a company on the sole basis of a parent-subsidiary relationship. *A.M. Mfg. Co., Inc. v. J.C. Ford Co.,* No. 06 C 2188, 2006 WL 1987825, at *3 (N.D. Ill. July 12, 2006). Illinois courts, however, recognize two methods by which personal jurisdiction over a subsidiary may be imputed to the parent company: (1) when the corporate veil has been pierced or (2) when the parent company substantially controls the activities of its subsidiary doing business in Illinois. *See IDS Life Ins. Co. v. SunAmerica Life Ins. Co.,* 136 F.3d 537, 540 (7th Cir. 1998); *Maunder v. DeHavilland Aircraft of Canada, Ltd.*, 466 N.E.2d 217, 222-23 (Ill. 1984). "Where corporate formalities are substantially observed and the parent does not dominate the subsidiary, a parent and a subsidiary are two separate entities and the acts of one cannot be attributed to the other." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.,* 230 F.3d 934, 944 (7th Cir. 2000). Parent companies, by their very

nature, exercise some control over their subsidiaries. *Id*. at 943; *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, No. 99 C 2524, 2000 WL 1015937, at *4 (N.D. Ill. Jan. 31, 2000) ("A corporate parent, especially one that is a holding company, may provide administrative services for its subsidiary without undermining corporate separateness and triggering personal jurisdiction over the parent."), *aff'd*, 230 F.3d at 934.

Apollo argues that ALH substantially controls the activities of its subsidiary, ALEC.[2] In support, Apollo states that Jimenez, a corporate officer of ALH, reviewed the execution and amendment of all ALEC contracts. (Pl.'s Resp. Mot. Dismiss 15.)[3] While this fact shows that ALH exercised *some* control over ALEC, it does not rise to the level of control necessary to treat the two companies as one for the purposes of personal jurisdiction. Although the Court granted the parties leave to conduct discovery with regard to personal jurisdiction, Apollo does not proffer any evidence of an overlap of financial statements, bookkeeping, tax returns, or any other circumstances which would support a finding of substantial or unusual control over ALEC. Thus, even if the exercise of personal jurisdiction over ALEC were proper, the Court would still not have personal jurisdiction over ALH solely because it is related to ALEC.

---

[2] As a threshold matter, Apollo contends that defendants have waived this argument because they failed to raise it in their original motion. Apollo's argument is unpersuasive. The parent/subsidiary argument was first raised by Apollo in its response in opposition to the motion to dismiss. Defendants then, appropriately, responded to the argument. The waiver rule exists to protect parties from the unfairness of not having an opportunity to respond to an argument that was not first raised in the original motion. That is not the case here.

[3] Although Apollo also argues that ALH, not ALEC, decided to purchase TraveLeaders and that ALEC had no employees for a significant period of time (Pl.'s Resp. Mot. Dismiss 14-15), Apollo failed to cite any exhibit to support its contentions. Accordingly, this argument is deemed waived.

17

**Conclusion**

For the reasons set forth above, this Court grants defendants' motion to dismiss for lack of personal jurisdiction [doc. no. 14]. American Leisure Holdings, Inc. and American Leisure Equities Corporation are hereby terminated as parties. Around the World Travel, Inc. remains as the sole defendant in this case.

**SO ORDERED**                    **ENTERED:**

**February 11, 2009**

*Ronald A. Guzman*
_____
**HON. RONALD A. GUZMAN**
**United States Judge**